1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DIANA GAIL REYNOLDS,                 ) Case No. CV 12-9179-JPR
                                     )
                Plaintiff,           )
                                     )
            vs.                      ) MEMORANDUM OPINION AND ORDER
                                     ) REVERSING COMMISSIONER AND
                                     ) REMANDING FOR FURTHER
CAROLYN W. COLVIN, Acting            ) PROCEEDINGS
Commissioner of Social               )
Security,[1]                         )
                                     )
                Defendant.           )
                                     )

17  **I.    PROCEEDINGS**

18          Plaintiff seeks review of the Commissioner's final decision

19  denying her application for Social Security disability insurance

20  benefits ("DIB") and Social Security Supplemental Security Income

21  benefits ("SSI").  The parties consented to the jurisdiction of

22  the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C.

23  § 636(c).  This matter is before the Court on the parties' Joint

24  Stipulation, filed July 30, 2013, which the Court has taken under

25

26  ─────────────────

27          [1]     On February 14, 2013, Colvin became the Acting
    Commissioner of Social Security.  Pursuant to Federal Rule of
28  Civil Procedure 25(d), the Court therefore substitutes Colvin for
    Michael J. Astrue as the proper Respondent.

submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

**II.  BACKGROUND**

Plaintiff was born on September 22, 1953.  (Administrative Record ("AR") 116, 125.)  She has a 12th-grade education.  (AR 150.)  Plaintiff previously worked as a housekeeper, horse trainer, assembler, and cashier.  (AR 49-50, 138, 148.) Plaintiff injured her neck in an accident[2] in 1999 and stopped working on July 1, 2004, allegedly because of her injury.  (AR 41, 147.)

On July 30, 2008, Plaintiff filed applications for DIB and SSI.[3]  (AR 116-22, 125-28.)  She alleged that she had been unable to work since July 1, 2004, because of neck pain, vertigo, and a circulation disorder.  (AR 135, 147.)  Her applications were denied initially, on September 26, 2008 (AR 53-54, 57-61), and upon reconsideration, on December 17 (AR 55-56).

After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge ("ALJ").  (AR 113-15.) A hearing was held on November 5, 2009, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  (AR 37-52.)  On November 12, 2009, the ALJ issued a

---

[2]    At the hearing, Plaintiff testified that she was injured in a "rollover car accident."  (AR 41; see also AR 188.) In an undated Disability Report, she claimed that she "fell of[f] a horse."  (AR 147.)

[3]    On January 10 and March 28, 2005, Plaintiff applied for SSI and DIB, respectively; both applications were denied at the initial level on June 24, 2005.  (See AR 29, 132.)  Plaintiff apparently did not request review of those denials.  (See id.)

2

1   written decision finding Plaintiff not disabled.  (AR 24-36.)  On
2   January 29, 2010, Plaintiff requested review of the ALJ's
3   decision and submitted additional evidence to the Appeals
4   Council.  (AR 22-23, 241-71.)  On January 18, 2011, the Appeals
5   Council incorporated the additional evidence into the record and
6   denied review.  (AR 12-15.)  On January 20, 2011, Plaintiff
7   submitted further evidence to the Appeals Council.  (AR 10, 272-
8   75.)  On August 30, 2012, the Appeals Council set aside its
9   earlier decision, considered the additional evidence submitted by
10  Plaintiff, and again denied review.  (AR 6-10.)  This action
11  followed.

12  **III. STANDARD OF REVIEW**

13          Pursuant to 42 U.S.C. § 405(g), a district court may review
14  the Commissioner's decision to deny benefits.  The ALJ's findings
15  and decision should be upheld if they are free of legal error and
16  supported by substantial evidence based on the record as a whole.
17  Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420,
18  1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746
19  (9th Cir. 2007).  Substantial evidence means such evidence as a
20  reasonable person might accept as adequate to support a
21  conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue,
22  504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla
23  but less than a preponderance.  Lingenfelter, 504 F.3d at 1035
24  (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
25  2006)).  To determine whether substantial evidence supports a
26  finding, the reviewing court "must review the administrative
27  record as a whole, weighing both the evidence that supports and
28  the evidence that detracts from the Commissioner's conclusion."

3

1  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).   Moreover,

2  "when the Appeals Council considers new evidence in deciding

3  whether to review a decision of the ALJ, that evidence becomes

4  part of the administrative record, which the district court must

5  consider when reviewing the Commissioner's final decision for

6  substantial evidence."   Brewes v. Comm'r of Soc. Sec. Admin., 682

7  F.3d 1157, 1163 (9th Cir. 2012); see also Taylor v. Comm'r of

8  Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).   "If the

9  evidence can reasonably support either affirming or reversing,"

10 the reviewing court "may not substitute its judgment" for that of

11 the Commissioner.   Reddick, 157 F.3d at 720-21.

12 **IV.   THE EVALUATION OF DISABILITY**

13       People are "disabled" for purposes of receiving Social

14 Security benefits if they are unable to engage in any substantial

15 gainful activity owing to a physical or mental impairment that is

16 expected to result in death or which has lasted, or is expected

17 to last, for a continuous period of at least 12 months.   42

18 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

19 (9th Cir. 1992).

20       A.   The Five-Step Evaluation Process

21       The ALJ follows a five-step sequential evaluation process in

22 assessing whether a claimant is disabled.   20 C.F.R.

23 §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,

24 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first

25 step, the Commissioner must determine whether the claimant is

26 currently engaged in substantial gainful activity; if so, the

27 claimant is not disabled and the claim must be denied.

28 §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If the claimant is not

4

engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[4] to perform her past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled

---

    [4]    RFC is what a claimant can do despite existing exertional and nonexertional limitations. 20 C.F.R. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

because she can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2004.  (AR 29.)  At step two, the ALJ concluded that Plaintiff had the severe impairment of "mild degenerative disc disease of the cervical spine."  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's impairment did not meet or equal any of the impairments in the Listing.  (AR 30.)  At step four, the ALJ found that Plaintiff had the RFC to perform the full range of medium work.[5]  (<u>Id.</u>)  Based on the VE's testimony, the ALJ concluded that Plaintiff was able to perform her past relevant work as a housekeeper/maid.  (AR 31.)  Accordingly, the ALJ determined that Plaintiff was not disabled.  (<u>Id.</u>)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred by (1) failing to find that she had the severe impairment of multiple sclerosis ("MS")

---

[5]   "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).  The regulations further specify that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work," as defined in §§ 404.1567(a)-(b) and 416.967(a)-(b).  <u>Id.</u>

1  and (2) failing to properly assess her credibility.[6]  (J. Stip.
2  at 3.)

3       A.   The ALJ Did Not Properly Assess Plaintiff's Credibility
4       Plaintiff argues that the ALJ did not provide clear and
5  convincing reasons to support his credibility determination.  (J.
6  Stip. at 18-21, 25-27.)  He did not, and his decision must
7  therefore be reversed.

8            1.   Applicable law
9       An ALJ's assessment of symptom severity and claimant
10 credibility is entitled to "great weight."  See Weetman v.
11 Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
12 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
13 believe every allegation" of disability, or else disability
14 benefits would be available for the asking, a result plainly
15 contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674
16 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and
17 citation omitted).  In evaluating a claimant's subjective symptom
18 testimony, the ALJ engages in a two-step analysis.  See
19 Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must
20 determine whether the claimant has presented objective medical
21 evidence of an underlying impairment [that] could reasonably be
22 expected to produce the pain or other symptoms alleged."  Id. at
23 1036 (internal quotation marks omitted).  If such objective
24 medical evidence exists, the ALJ may not reject a claimant's
25 testimony "simply because there is no showing that the impairment

26
27        [6]    The Court addresses the issues raised in the Joint
28 Stipulation in an order different from that used by the parties,
   to avoid repetition and for other reasons.

                                  7

1    can reasonably produce the *degree* of symptom alleged." <u>Smolen</u>,

2    80 F.3d at 1282 (emphasis in original).  When the ALJ finds a

3    claimant's subjective complaints not credible, the ALJ must make

4    specific findings that support the conclusion.  <u>See</u> <u>Berry v.</u>

5    <u>Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative

6    evidence of malingering, those findings must provide "clear and

7    convincing" reasons for rejecting the claimant's testimony.

8    <u>Lester</u>, 81 F.3d at 834.  If the ALJ's credibility finding is

9    supported by substantial evidence in the record, the reviewing

10    court "may not engage in second-guessing."  <u>Thomas</u>, 278 F.3d at

11    959.

12            2.  <u>Background</u>

13      In an undated Disability Report, Plaintiff reported that her

14    ability to work was limited by a "neck injury" and "circulation

15    problems and vertigo."  (AR 147.)  She claimed that she could not

16    "stand or move well or even eat due to the vertigo" and could not

17    get out of bed on "many days."  (<u>Id.</u>)  She stated that she had

18    not been seen by a doctor, hospital, clinic, or anyone else for

19    treatment of her condition (AR 149), but she claimed that it was

20    because "I have no medical insurance so I have not had any

21    medical care; I have just been suffering for years now" (AR 151).

22    She went on to state:

23        I have applied for general relief so I will be attending

24        a medical consultation in order to begin receiving GR.

25        I need medical care but don't have insurance so I just

26        end up throwing up due to having to endure the endless

27        pain.

28    (<u>Id.</u>)

1   At the hearing, Plaintiff's attorney questioned her about
2   her work history, health, and daily activities. (AR 39-49.)
3   Plaintiff testified that for the past 10 years, since she was in
4   "[a] rollover car accident," she had suffered from pain in her
5   head, dizziness, nausea, and balance and coordination problems.
6   (AR 41.)  She claimed that the pain had gotten progressively
7   worse since her accident, and it felt like "my head is in a vice
8   [sic]." (Id.)  She stated that the pain "crawl[ed] down her
9   face," made her "lose control," and caused symptoms such as "the
10  vertigo, dizziness, the nausea, throw up." (AR 41-42.)  She
11  claimed that the pain was present "[a]ll the time" and never went
12  away. (AR 42.)  She stated that when the pain was "really bad,"
13  her vertigo got "worse," she had trouble walking and balancing,
14  and she "f[e]ll easily." (AR 43.)  She claimed that sometimes
15  she was not able to walk and had to "crawl around on the floor."
16  (Id.)  Her vertigo also caused her to throw up and made it
17  difficult to focus. (AR 44.)  Plaintiff testified that she got
18  acupuncture to treat her pain, which helped "a little bit," but
19  she had not had acupuncture "since [her] retirement money was
20  stolen" (AR 42); later, however, she testified that she had had
21  acupuncture the day before the hearing (AR 44), although she
22  intimated that she had not had to pay for it (AR 43).  The ALJ
23  did not inquire as to Plaintiff's ability to pay for treatment;
24  indeed, he did not question Plaintiff at all. (See AR 39-49.)

25          3.  Analysis

26      The ALJ made the following findings as to Plaintiff's
27  credibility:

28          I cannot give weight to the claimant's allegations

9

that she cannot do her past work because her statements are not consistent with the objective findings or the record as a whole.  At the hearing, she alleged that she experiences nausea, poor balance, pain in her head along with constant falling at least once a week which she attributes to the motor vehicle accident of 1999.  She also alleged that she could only stand/walk for about one hour.  There is very little evidence of treatment.  There is no evidence of a severe unintended weight loss, or severe sleep deprivation because of pain.  Additionally, there is no evidence of interference with concentration or attention or with the ability to relate and respond appropriately as a consequence of pain.  Thus, there is no medical corroboration of her subjective complaints.

The absence of ongoing medical treatment is also inconsistent with her allegation of disabling functional limitations secondary to pain, and with a worsening in her condition.  It is reasonable to assume that were the claimant in as bad shape as she alleged, she would have sought some treatment to help alleviate her pain.  She is not currently participating in physical therapy, she does not use a TENS unit and has not been prescribed a brace, cane or walker.  She also denied taking any medications [(AR 188-94)].

I find, therefore, that the evidence as a whole shows that her subjective complaints are not sufficiently credible to require me to accept her allegation of excess pain and limitations.  Accordingly, I will rely upon the

1      objective medical evidence which indicates an ability to
2      do medium exertion work activity.
3  (AR 30-31.)   The ALJ then found that Plaintiff had the RFC to
4  perform the full range of medium work.  (AR 31.)   In making his
5  RFC finding, the ALJ found that Plaintiff's testimony did not
6  establish greater limitations "because her statements are not
7  entirely credible."   (Id.)  He made the following additional
8  findings as to her credibility:

9          As stated above, there is very little evidence of
10         treatment.   The claimant's daily activities are also
11         inconsistent with her allegations.   She does not appear
12         to be too motivated to work.   Dr. Gwartz noted that she
13         took the bus to the evaluation [(AR 188-94)].   On her
14         Exertional Activities Questionnaire, she reported that
15         she lived with her family in her sister's house and she
16         drove her car [(AR 135-37)].   At the hearing, she
17         testified that she gets on the computer, does some
18         laundry, prepared meals, grocery shopped and visited her
19         neighbor.   I find that the claimant's inconsistencies
20         negatively impact her credibility and do not permit
21         reliance on her statements.

22  (Id.)

23      In determining credibility, an ALJ may consider "unexplained
24  or inadequately explained failure to seek treatment or to follow
25  a prescribed course of treatment."   Molina, 674 F.3d at 1112
26  (citation and internal quotation marks omitted); see also Orn v.
27  Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("[I]f a claimant
28  complains about disabling pain but fails to seek treatment, or

11

fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). But an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. "[D]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." Orn, 495 F.3d at 638 (internal quotation marks, alteration, and citation omitted).

Plaintiff stated in her Disability Report that she did not seek treatment because she had "no medical insurance." (AR 151.) At the hearing, Plaintiff also alluded to not being able to afford treatment. (See AR 42, 43.) Plaintiff's lack of insurance could have explained her failure to seek treatment, but the ALJ did not question Plaintiff about it during the hearing, nor did he seek an explanation for it at any other time. Indeed, he didn't mention it in his decision. It is possible the ALJ found Plaintiff's explanation not credible, particularly given that she told the consulting examiner, Dr. Barry Gwartz, that she did not seek treatment because "I don't want to see doctors, I stay away from them." (AR 188.) But the Court cannot make that determination based on the record before it. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (district court must "review the ALJ's decision based on the

12

1  reasoning and factual findings offered by the ALJ — not *post hoc*
2  rationalizations that attempt to intuit what the adjudicator may
3  have been thinking"). The ALJ's adverse credibility finding
4  based on Plaintiff's failure to seek treatment was thus improper
5  because nothing in the record shows that he considered her
6  alleged inability to afford treatment. See SSR 96-7p; Orn, 495
7  F.3d at 638.[7]

8      Because the majority of the ALJ's credibility finding was
9  premised on Plaintiff's failure to seek treatment (see AR 30-31),
10 the Court cannot say that the error was harmless. Cf. Schow v.
11 Astrue, 272 F. App'x 647, 652-53 (9th Cir. 2008) (holding that
12 ALJ's reasons for rejecting plaintiff's credibility not supported
13 by substantial evidence when "at least five" of eight reasons not
14 supported by record). Moreover, the ALJ's other stated reasons

15

16      [7]  Plaintiff argues generally that the ALJ's reasons for
17 rejecting her testimony were not clear and convincing, but she
   does not specifically argue that the ALJ erred in rejecting her
18 credibility based on her failure to seek treatment because he did
   not first consider her alleged inability to afford treatment.
19 (See J. Stip. at 18-21, 25-27.) Ordinarily a court will not
   consider matters "that are not specifically and distinctly
20 argued" in the claimant's briefs. See Carmickle v. Comm'r, Soc.
   Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (internal
21 quotation marks and citation omitted). Defendant relies on
   Plaintiff's failure to seek treatment in her portion of the Joint
22 Stipulation, however (see J. Stip. at 24-25), and thus the Court
   addresses her alleged inability to pay. In any event, the
23 reviewing court has an independent duty to determine "whether the
   Commissioner's decision is (1) free of legal error and (2) is
24 supported by substantial evidence," and it cannot uphold an ALJ's
   decision when that decision is based on an obvious error.
25 See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)
   (internal quotation marks and citation omitted); see also United
26 States v. Levy, 391 F.3d 1327, 1335 (11th Cir. 2004) ("The issue
27 is not whether this Court has the power to consider issues not
   raised in the initial brief; of course it does.").
28

                          13

1   for rejecting Plaintiff's credibility – that her testimony

2   conflicted with her daily activities and the medical evidence of

3   record – may not have been clear and convincing.

4        The ALJ found that Plaintiff's testimony was not credible in

5   part because she took the bus to her consultative evaluation,

6   drove a car, and "gets on the computer, does some laundry,

7   prepared meals, grocery shopped and visited her neighbor." (AR

8   31.) But Plaintiff testified that she did not cook at all except

9   for making "cereal or something easy"; drove a car "maybe once a

10  month" for a block and did not feel comfortable driving more

11  because of her dizziness; did only "a little bit" of laundry;

12  used the computer for "about an hour" at most; and visited her

13  neighbor only two or three times a week for approximately one

14  hour to check on him because he had had a kidney transplant. (AR

15  45-48.) The ALJ did not explain why Plaintiff's engaging in very

16  occasional activities meant that she was not usually dizzy or in

17  pain. His evaluation of Plaintiff's daily activities in relation

18  to her subjective symptom testimony was thus not supported by

19  substantial evidence. See Vertigan v. Halter, 260 F.3d 1044,

20  1050 (9th Cir. 2001) (noting that "[t]his court has repeatedly

21  asserted that the mere fact that a plaintiff has carried on

22  certain [limited] daily activities . . . does not in any way

23  detract from her credibility as to her overall disability,"

24  "[o]ne does not need to be 'utterly incapacitated' in order to be

25  disabled," and a claimant "may do these activities despite pain

26  for therapeutic reasons, but that does not mean she could

27  concentrate on work despite the pain or could engage in similar

28  activity for a longer period given the pain involved"); Moya v.

14

<u>Astrue</u>, No. EDCV 10–01584–JEM, 2011 WL 5873035, at *8 (C.D. Cal. Nov. 22, 2011) (reversing ALJ's decision because his evaluation of plaintiff's daily activities did not address important evidence in record and activities cited were "not inconsistent" with Plaintiff's alleged symptoms).

The ALJ's finding that Plaintiff's subjective symptoms were not consistent with the medical evidence of record also cannot support his credibility determination because, as explained below, he did not consider Plaintiff's subsequent diagnosis of MS and most likely downplayed her symptoms potentially attributable to it because it had not yet been diagnosed at the time of his decision.

Thus, the ALJ's decision must be reversed and this matter remanded for further proceedings.  On remand, the ALJ should inquire as to the reasons for Plaintiff's failure to seek treatment, and, if he finds her proffered reasons unpersuasive, he should state why.  He should also explain more fully why Plaintiff's daily activities conflicted with her subjective symptom testimony, should he continue to so find.  Finally, he should weigh Plaintiff's credibility in light of her MS diagnosis.

B.   <u>Other Issues</u>

Plaintiff argues that the ALJ erred in failing to discuss Plaintiff's diagnosis of MS or find that it was a severe impairment.  (J. Stip. at 4-6, 15-18.)  Much of Plaintiff's argument centers on the new evidence she submitted to the Appeals Council after the ALJ issued his written decision, which shows that she was diagnosed with MS in 2010.  (AR 242-75.)

1    "New and material evidence" that is "submitted to and

2    considered by the Appeals Council is not new but rather is part

3    of the administrative record properly before the district court."

4    Brewes, 682 F.3d at 1164; see also Tackett v. Apfel, 180 F.3d

5    1094, 1097–98 (9th Cir. 1999).  New evidence is relevant to

6    determining whether the ALJ's decision is supported by

7    substantial evidence "only where it relates to the period on or

8    before the hearing date of the administrative law judge hearing

9    decision."  See 20 C.F.R. §§ 404.970(b), 416.1470(b); cf. Smith

10   v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) (holding that

11   "reports containing observations made after the period for

12   disability" that retrospectively analyze the claimant's pre-

13   expiration condition "are relevant to assess the claimant's

14   disability").

15       The new evidence Plaintiff submitted dates from August 2009

16   to January 2011.  (See AR 241-75.)[8]  Thus, some of it related to

17

18       [8]    Defendant asserts that ordering remand based on the new
19   evidence Plaintiff submitted to the Appeals Council "would
     encourage claimants to submit additional evidence and seek a
20   'second bite at the apple' in the event of an adverse decision."
     (J. Stip. at 14.)  Plaintiff has not presented any reason why she
21   did not proffer the new medical records, at least some of which
     presumably were available at the time of the hearing, to the ALJ
22   rather than waiting to submit them to the Appeals Council.
     Reviewing administrative records supplemented with information
23   the ALJ did not consider "mire[s]" the federal courts "in an
     Alice in Wonderland exercise of pretending that evidence the real
24   ALJ didn't know existed was really before him."  Angst v. Astrue,
     351 F. App'x 227, 229-30 (9th Cir. 2009) (Rymer, J., concurring).
25   But the proper remedy for any unfairness caused by a claimant's
     late submission of allegedly inapplicable evidence is for the
26   Appeals Council to refuse to consider it, which it has the
     discretion to do if the evidence does not relate to "the period
27   on or before the date of the [ALJ] hearing decision."  See 20
     C.F.R. §§ 404.970(b); 416.1470(b).  Once the Appeals Council has
28

16

the period before the ALJ rendered his decision, in November 2009, and some arose later.  Although it appears that some of the symptoms Plaintiff claimed, such as being unsteady on her feet and dizzy, arose from her as-yet-undiagnosed MS, the Court need not decide whether the new evidence would have altered the ALJ's opinion because the ALJ will necessarily have a chance to evaluate that evidence on remand.  See Johnson v. Astrue, No. C09-5688RBL, 2010 WL 3998098, at *5 (W.D. Wash. Sept. 14, 2010) ("Remand for reconsideration of the ALJ's residual functional capacity finding . . . will necessarily require the administration to reconsider all of the medical evidence, plaintiff's testimony, the lay witness statements, and the additional evidence submitted to the Administration's Appeals Council in their entirety.").  The Court does note, however, that the ALJ provided very little explanation for his determination that Plaintiff's vertigo, nausea, dizziness, and balance problems were not severe.  (See AR 30-31.)  On remand, to the extent the ALJ finds that those conditions, or Plaintiff's MS, are not severe impairments, he should set forth specific reasons supporting his findings.  See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" (quoting SSR 85-28, 1995 WL 56856, at *3)); Lockwood

_____

incorporated the evidence into the record, the Court has no choice but to consider it.  See Brewes, 682 F.3d at 1164; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).

v. Colvin, No. 12-cv-00493-NJV, 2013 WL 1964923, at *7 (N.D. Cal. May 10, 2013) (reversing when ALJ failed to "explain why" he found additional impairments nonsevere).

**VI.   CONCLUSION**

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Accordingly, remand, not an award of benefits, is the proper course in this case.  See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136 (9th Cir. 2011) (remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability).  As noted above, on remand, the ALJ should inquire as to Plaintiff's reasons for failing to seek treatment for her impairments, and he should reevaluate her credibility accordingly.  Moreover, to the extent he concludes that Plaintiff's vertigo, nausea, dizziness, balance problems, and MS are not severe, he should set forth specific findings supporting those conclusions.

1

**<u>ORDER</u>**

2      Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of

3 the Commissioner is REVERSED; (2) Plaintiff's request for remand

4 is GRANTED; and (3) this action is REMANDED for further

5 proceedings consistent with this Memorandum Opinion.

6      **IT IS FURTHER ORDERED** that the Clerk of the Court serve

7 copies of this Order and the Judgment herein on all parties or

8 their counsel.

9

10 DATED: September 6, 2013

                        JEAN ROSENBLUTH

11                         U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19